1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

LILIA AGUILAR,                    )        NO. CV 09-07223 AGR
                                  )
            Plaintiff,            )
                                  )
      v.                          )
                                  )        **MEMORANDUM OPINION AND**
MICHAEL J. ASTRUE,                )        **ORDER**
Commissioner of Social Security,  )
                                  )
            Defendant.            )
_____    )

      Lilia Aguilar filed this action on October 6, 2009.  Pursuant to 28 U.S.C. §
636(c), the parties consented to proceed before Magistrate Judge Rosenberg on
October 16 and November 18, 2009.  (Dkt. Nos. 8, 9.)  On June 16, 2010, the
parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The
Court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the Court remands this matter to the
Commissioner for proceedings consistent with this Opinion.

///
///
///
///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**

## PROCEDURAL BACKGROUND

On January 17, 2007, Aguilar filed an application for Title XVI disability benefits. Administrative Record ("AR") 16. She alleged a disability onset date of January 17, 2006. AR 16, 235. The application was denied initially. AR 16. Aguilar requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* On November 29, 2007, the ALJ conducted a hearing at which Aguilar, a lay witness, and a vocational expert testified. AR 16, 70-100. On February 4, 2008, the ALJ issued a decision denying benefits. AR 52-64. On March 3, 2008, Aguilar requested that the Appeals Council review the decision denying benefits. AR 192. On August 21, 2008, the Appeals Council remanded the case. AR 200-02. On December 9, 2008, the ALJ conducted another hearing at which Aguilar gave further testimony.[1] AR 103-31. A vocational expert also testified. *Id.* On May 27, 2009, the ALJ issued a decision denying benefits. AR 10-26. On June 18, 2009, Aguilar requested that the Appeals Council review the decision denying benefits. AR 7. On September 17, 2009, the Appeals Council denied the request for review. AR 1-3. This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might

---

[1] An interpreter was present to assist Aguilar at both hearings. *See* AR 70, 103.

accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

**III.**

**DISCUSSION**

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### B.  The ALJ's Findings

The ALJ found that Aguilar has the severe impairments of "[m]ood disorder, NOS and Borderline Intellectual Functioning."  AR 19.  Aguilar has the residual functional capacity to perform medium work with the following limitations:  "[N]o detailed or complex tasks"; "moderate limitations in concentration and attention"; and "she is illiterate and unable to communicate in English."  AR 23.

The ALJ found that Aguilar can perform her past relevant work as a babysitter and that she can perform other work in the local and national economies, including as an entry level heavy cleaner, sandwich maker, and cleaner.  AR 25.

### C.  Lay Witness Testimony

Aguilar argues that the ALJ erred in failing to consider lay witness statements and testimony of her friend, Ms. Garcia.  JS 4.

3

1
2
3
4
5
6

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

7
8
9
10
11
12
13
14

Garcia testified at the initial administrative hearing and completed two Function Reports.  AR 90-99, 253-60, 269-76.  Garcia stated that Aguilar is with her from 7:00 a.m. to 2:00 p.m. daily.  AR 253, 269.  In summary, Garcia stated Aguilar has to be reminded to take care of her personal needs like showering and changing clothes.  AR 255, 270.  Aguilar cannot cook, do household chores, speak English, read, write, drive or manage money.  AR 255-257, 271-273.  She can pay attention for 10 or 15 minutes.  AR 258.  Aguilar comes to Garcia's house by herself, but cannot be alone for long periods of time.  AR 272.

15
16
17
18
19
20
21
22
23
24
25
26

> I'm taking the responsibility [for helping her out]
> because I see that nobody help her.  Nobody is around
> her to give her the support, and I see that she's sick.
> The way she walks, the way she talks, she talks slow,
> and she can't do things.  She burn herself when she
> cook, and I tell her stop doing that because she come
> to my house all burned.  Her hands was burned, and I
> say don't, don't burn, don't cook anymore, I will do it for
> you.  And sometimes she forgot.  Not sometimes, all
> the time.  Most of the time she forgot thing, and she
> repeat almost the same thing like five or six times a
> day, the same thing.

27

AR 96.

28

The ALJ discounted Garcia's statements about Aguilar's need for a highly

4

1   supportive environment based on (1) Aguilar's ability to travel independently to

2   see Garcia; (2) inconsistency with the mental status examination and other

3   medical evidence; and (3) Aguilar's minimal work activity after the alleged onset

4   date.  AR 24.

5        Ordinarily, inconsistency with a claimant's daily activities is a germane

6   reason for rejecting a lay witness' statements.  *Lewis v. Apfel*, 236 F.3d 503, 512

7   (9th Cir. 2001) (ALJ did not err in considering inconsistent testimony regarding

8   sleep habits); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

9   1164 (9th Cir. 2008) (ALJ properly discounted lay witness testimony inconsistent

10  with claimant's ability to complete continuous full-time course work).

11       However, Garcia's written questionnaire acknowledges that Aguilar can

12  use public transportation and that Aguilar "goes out of the house to come to my

13  house alone but then she has to be with me all day she can't be alone for long

14  periods of time."  AR 272.  That Aguilar is able to get to Garcia's home by herself

15  does not undermine Garcia's statements concerning Aguilar's functional

16  limitations.

17       In general, inconsistency with medical evidence is a germane reason to

18  discount lay witness statements.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th

19  Cir. 2005); *Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount

20  lay testimony is that it conflicts with medical evidence.").  The ALJ found that the

21  "[m]ental status examination findings are sparse and do not reflect a total inability

22  to care for oneself or the need for 24 hour supportive care as claimed by the

23  claimant's friend."  AR 24.

24       Read as a whole, however, the psychologist's report is not inconsistent

25  with Garcia's observations.  The psychologist noted that Aguilar's "[c]urrent

26  intellectual functioning is in the borderline range of ability."  AR 335.  Her

27  "[p]sychomotor slowing is mildly evident."  *Id.*  Her fund of knowledge is poor, and

28  her insight and judgment are "below average for chronological age."  *Id.*  Her IQ

1    quotient was 65.  AR 336.  Her mood was dysthymic, her affect was constricted,

2    and her concentration was moderately diminished.  AR 335.  The psychologist

3    noted that the "test results appear to be an underestimation of the claimant's

4    ability at this time due to poor effort."  AR 336.  She opined that Aguilar would be

5    able to understand, remember and carry out short, simplistic instructions.  On the

6    other hand, "a payee should be assigned to her."  AR 337.  Aguilar's treating

7    records also assess impaired memory, concentration, judgment and insight with

8    paranoid and phobic ideation, fearfulness and isolation.  *E.g.,* AR 323, 385, 389.

9         Finally, the ALJ relied on Aguilar's minimal work history after the alleged

10   onset date of January 17, 2006.  AR 16, 24; *Lewis*, 236 F.3d at 512.  The record

11   reflects that Aguilar was babysitting a child until October 2006.  *See, e.g.*, AR 240

12   (Disability Report indicating Aguilar worked as babysitter January 2005-October

13   2006), AR 245 (Work History Report indicating same), AR 334 (psychological

14   evaluation indicating Aguilar said she worked as babysitter in 2006).  Aguilar

15   testified she babysat at home for a friend's toddler three days per week for a four-

16   month period.  The job ended when the mother stopped working.  AR 78-80.

17   Garcia testified she did not have contact with Aguilar at that time, but was

18   generally aware that Aguilar had previously taken care of a child in her home.  AR

19   99.  This minimal work history in Aguilar's home does not undermine Garcia's

20   testimony.

21        Because the ALJ failed to give germane reasons for rejecting Garcia's

22   testimony and statements, the matter must be remanded.  *See Bruce v. Astrue*,

23   557 F.3d 1113, 1114 (9th Cir. 2009).

## IV.

## ORDER

26        IT IS HEREBY ORDERED that the decision of the Commissioner is

27   reversed and remanded to take into account Ms. Garcia's statements and

28   ///

6

testimony at Steps Four and Five of the sequential analysis and, if appropriate, assignment of a payee.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 7, 2011

_____
ALICIA G. ROSENBERG
United States Magistrate Judge